**UNITED STATES of America**
**v.**
**John L. REMCO, Appellant.**
**No. 16610.**

United States Court of Appeals
Third Circuit.

Argued Nov. 3, 1967.

Decided Feb. 2, 1968.

Martin Vinikoor, Philadelphia, Pa., for appellant.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for appellee.

Before McLAUGHLIN, GANEY and SEITZ, Circuit Judges.

## OPINION OF THE COURT

GANEY, Circuit Judge.

Defendant-appellant was found guilty on December 28, 1965, of having willfully filed an income tax return for the calendar year 1959 knowing that it failed to disclose his receipt of $24,400 in income for that year in violation of 26 U.S.C.A. § 7206(1). At the trial in September of 1965, which was to a court without a jury, the prosecution showed that defendant had received $24,400 in 1959 from Central Slipper Company, Inc., to act as a consultant for the development of a disposable paper shower slipper. His post-trial motions were denied on February 7, 1967, and he was sentenced to prison.

His appeal is based on two grounds: The omission of the trial court to indicate in finding him guilty that it had disregarded certain assertedly inadmissible testimony; and the insufficiency of the evidence to establish that he willfully made a false return in violation of 26 U.S.C.A. § 7206(1).

Over defendant's objection that it is improper to allow a witness to testify as to admissions made by a defendant prior to his taking the stand, the trial judge permitted a special agent of the Internal Revenue Service to relate some of the statements made by the defendant during an interview. The interview was conducted by the Service at the Veterans Administration Building in Wilkes-Barre, Pennsylvania, on February 26, 1963, and defendant was accompanied by his attorney, the same one who defended him at the trial. Also present were three agents of the Service. The special agent testi-

fied that the defendant said, after he was apprised that he was being investigated for his failure to report the $24,400 received by him from Central Slipper Company as income during 1959, that he had used that money to pay off certain stockholders, and creditors of a corporation, and that he admitted that the signature appearing in the lower lefthand corner of a letter agreement confirming the employment arrangement between him and Central Slipper Company for one year at a salary of $25,000 was his. He also made a number of self-serving declarations which, upon later investigation by the Service, proved to be without foundation in fact. The agents did not warn him of his right to remain silent and that anything he might say could be used against him in a court of law.

■ Before us defendant argues that the guidelines (i. e., the warning one of his rights to remain silent and that anything he says can be used against him in a court of law) set forth in Miranda v. State of Arizona, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966) should have been followed at the interview before his utterances to the Internal Revenue agents could have validly been admitted into evidence against him at the trial. Whether the additional guidelines of the *Miranda* case need be followed in an income tax investigation before his statement may become admissible in court we need not decide here. The new standards of *Miranda* apply only to trials begun after June 13, 1966, the date that decision was announced. Here defendant's trial began on September 20, 1965, and the verdict of guilty was rendered on December 28, 1965. Defendant makes no claim that his statements during the interview were involuntary, and there is not a shred of evidence in the record which could support a finding that his statements were induced by trickery or deceit on behalf of the agents. His statements were properly admitted into evidence and they could be considered by the court, along with all the other evidence, in arriving at its verdict.

Defendant testified in his own behalf but did not place his general reputation in issue. On cross-examination the prosecution was permitted, for the expressed purpose of attacking defendant's credibility as a witness, to ask defendant, over his objection, if it was not a fact that he was charged in the State of New York with having committed a crime of attempted grand larceny in the second degree [1] in connection with dealings of a realty development company with which he was connected, and that he plead guilty to that charge on April 27, 1961, in a New York State Court.

■■ For the purpose of impeaching the credibility of a defendant who takes the stand in a criminal case as a witness in his own defense, it is competent to show his convictions for misdemeanors amounting to *crimen falsi* or felonies.[2] United States v. Montgomery, 126 F.2d 151, 155 (3 Cir. 1942), cert. denied 316 U.S. 681, 62 S.Ct. 1268, 86 L.Ed. 1754. Also see United States v. Klass, 166 F.2d 373 (C.A.3, 1948); United States v. Howell, 240 F.2d 149 (C.A.3, 1956); Smith v. United States, 358 F.2d 683 (C.

---

1. The crime of grand larceny in the second degree (New York State Penal Law, 1909, § 1296) was punishable by imprisonment for a term not exceeding five years. Id. § 1297. Punishment for an attempt to commit a crime was by imprisonment for not more than half the longest term upon conviction for the commission of the offense attempted. Id. § 261. By definition an attempt to commit the crime of grand larceny in the second degree was a felony. Id. § 2. The old 1909 Penal Law has since been revised. See Penal Law, L.1965, c. 1030, effective September 1, 1967, 39 McKinney's Consolidated Laws of N.Y., Annotated, c. 40 (1967 Ed.) § 1.-00 et seq.

2. See Commonwealth v. Gold, 155 Pa. Super. 364, 370–371, 38 A.2d 486 (1944), where prior convictions on charges of larceny were held properly admitted to impeach defendant's credibility as a witness. In that case appellant also contended that the rule should be interpreted so that it reads not only misdemeanors in the nature of a *crimen falsi* but felonies in the nature of *crimen falsi*. The Court was unable to find any basis for such distinction.

A.3, 1966); 98 C.J.S. Witnesses § 507. Moreover, moral turpitude has found judicial employment as a criterion in impeaching witnesses. See Jordan v. De George, 341 U.S. 223, 227, 71 S.Ct. 703, 95 L.Ed. 886 (1951). It has been held that the crime of larceny or embezzlement involves moral turpitude. Christianson v. United States, 226 F.2d 646, 655 (C.A.8, 1955), cert. denied 350 U.S. 994, 76 S.Ct. 543, 100 L.Ed. 859. Consequently, the trial court committed no error in permitting the cross-examination.

However, generalizing, by the admission into evidence of former convictions of all felonies comes under some criticism in Gordon v. United States, D.C.Cir., 383 F.2d 936. Here, it is suggested we re-examine the legitimate purposes of impeachment which are to show background facts which have a direct impact on whether jurors should believe a defendant rather than other conflicting evidence. To this end it states, at page 940: "In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not; traffic violations, however serious, are in the same category." However, while this analysis has much to be said for it, and this former conviction may well come within its orbit, the rule as stated in United States v. Montgomery, supra, and Smith v. United States, supra, is still the law of this circuit and the admission into evidence of this former conviction was not error.

■ There was sufficient evidence to support the trial court's finding the defendant guilty of the charge under the indictment.

The judgment of the district court will be affirmed.